IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
A.P. MØLLER - MÆRSK A/S         )
                                )
        Plaintiff,              )
                                )          1:07cv1276 (JCC)
        v.                      )
                                )
ESCRUB SYSTEMS INC.,            )
                                )
        Defendant.              )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. For the following reasons, the Court will grant Plaintiff's motion for a Preliminary Injunction.

### I.   Background

A.P. Møller - Mærsk ("Mærsk"), a shipbuilder and owner and operator of seagoing vessels, entered into an agreement (the "Contract") with eSCRUB Systems Incorporated ("eSCRUB"), a research and development company which has developed air pollution control systems, to evaluate the adaptation of eSCRUB's high energy electron scrubbing technology to Mærsk's shipboard operations, named eSCRUB@Sea in the Contract. There were particular provisions in the Contract governing the ownership of intellectual property that arose from the collaboration, with joint ownership of inventions jointly conceived, and individual ownership if separately conceived, and granting Mærsk the license

for eSCRUB@Sea.  During their relationship, the parties worked together to develop the eSCRUB@Sea technology.

The final payment of $50,000 from Mærsk to eSCRUB, according to the Contract, was to be made upon an invoice submitted after delivery of a final report.  On or about October 1, 2007, eSCRUB provided Mærsk a "Draft Final Report" and invoiced Mærsk for final payment.  Mærsk Determined that the "Draft Final Report" was not the final report in accord with the Contract and declined to pay until eSCRUB remedied the noted inadequacies.  eSCRUB did not make these corrections, and Mærsk has not made the final payment.

After the dispute over the final payment arose, eSCRUB also demanded that Mærsk pay license fees for rights which Mærsk believed the Contract already provided to it.  Mærsk also accuses eSCRUB of changing the definition of eSCRUB@Sea from its broad description in the Contract by breaking it into three component parts: eSCRUB@Sea, eSCRUB@Coastal, and eSCRUB-e-Beam.  On October 1, 2007, eSCRUB filed a provisional patent application with the U.S. Patent & Trademark Office ("USPTO") covering the three component technologies without naming Mærsk as a co-inventor, despite the fact that the technologies at issue were developed cooperatively under the Contract.  eSCRUB has also been in communication with a third party regarding the desire to do business relating to the disputed technology, making disclosures

in violation of the confidentiality provisions of the Contract.

On or about December 7, 2007, eSCRUB filed a Request for Arbitration with the Arbitration Institute of the Stockholm Chamber of Commerce (the "Arbitration") regarding Mærsk's failure to make the final $50,000 payment required by the Contract and Mærsk's intellectual property rights with regard to the eSCRUB@sea technology.

On December 19, 2007, Mærsk filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. This Motion is currently before the Court.

## II. Standard of Review

The issuance or denial of a preliminary injunction or temporary restraining order ("TRO") "is committed to the sound discretion of the trial court." *Quince Orchard Valley Citizens Ass'n, Inc v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989). In determining whether an injunction is appropriate, a district court must apply the "balance-of-hardship" test. *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194 (4th Cir. 1977); *Railway Labor Executives' Ass'n v. Wheeling Acquisition Corp.*, 736 F. Supp. 1397, 1401-02 (E.D. Va. 1990) (Ellis, J.) (applying *Blackwelder* test to determine issuance of temporary restraining order).

Under the test, a court should examine the following four factors: (1) the likelihood of irreparable harm to the

plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *See Hughes Network Systems, Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture*, 550 F.2d at 193-96. No single factor can defeat a motion for a preliminary injunction or TRO. Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors considered." *Blackwelder Furniture*, 550 F.2d at 196.

### III. Analysis

In carefully balancing the factors of the *Blackwelder* test, for the reasons stated below, the Court will grant Plaintiffs' Motion for a Preliminary Injunction.

The first question the Court must address is its jurisdiction in this matter. It finds that Plaintiff has presented sufficient evidence for the Court to conclude that the Eastern District of Virginia has jurisdiction due to Defendant's maintenance of a place of business in Alexandria, Virginia, and the fact that the Contract at issue was negotiated in Virginia.

A) <u>Likelihood of harm to the Plaintiff</u>

An Arbitration Request has been filed in Sweden, as required by the Contract at issue. Until the arbitration is resolved, Plaintiff fears that Defendant will unlawfully disclose

proprietary information and file unauthorized patent applications, in violation of the contract agreement between the two parties, which will harm Plaintiff's intellectual property rights.  Without a TRO, Plaintiff argues that its trade secrets will be disclosed to third parties, information that cannot be un-learned.  Although there is an arbitration pending, which might be able to provide a remedy to Plaintiff, any damages awarded retroactively will not be able to protect Plaintiff from or retrieve the improper dissemination of private information.  In addition, Plaintiff questions Defendant's solvency, suggesting that, even if it is able to obtain an award of adequate monetary damages later, it may not be able to collect that award and thus will not even receive financial remuneration for the valuable property it has lost.

    Defendant argues that it is unable to profit from any of the trade secrets at issue in this matter due to the very fact that they are disputed, making them worthless to any third parties until the question of licensing is resolved, making Defendant is unable to sell or license the technologies.  Therefore, Defendant argues, the very existence of this dispute and the pending Arbitration make Defendant unable to engage in the activity Plaintiff claims is harmful.

    Despite its protestations of imminent harm, Plaintiff has requested a time extension with regard to the selection of

the arbiters in the Arbitration in Sweden.  Additionally, Defendant asserts that there are interim measures similar to a preliminary injunction available in Sweden under the law which governs the Contract and the Arbitration.  Both parties will be given until January 4, 2008, to file affidavits with the Court regarding the availability of preliminary measures in Sweden during the pendency of the Arbitration, at which point this Court will reconsider whether it is the most appropriate body to provide the requested protection.

   B) <u>Likelihood of harm to the Defendant</u>

       Defendant is a research and development company. Enjoining it from discussing its research and development with third parties hinders it from doing its essential business. Defendant argues that a broad injunction would keep it from engaging in its daily work and prohibit it from interactions even with third parties with whom they have confidentiality agreements, and that the requested injunction would prohibit Defendants from being able to obtain necessary patent protection on any of a wide range of inventions that could arguably be connected with this matter.  In addition, the law of Sweden governs this Contract and the Arbitration that arises from it. Defendant has already been harmed by the holding of this Motion in the Eastern District of Virginia because it was unable to obtain local counsel on such short notice, is unfamiliar with the

laws of this jurisdiction, and is being asked to defend itself under a system of law other than that bargained for in the Contract.

Plaintiff counters that Defendant will be able to continue to maintain all proper business, and that it will only be restricted from engaging in activities that would be in breach of the Contract. Therefore, Defendant cannot experience inequitable harm through the enactment of an injunction that, according to Plaintiff, merely keeps it from violating the Contract.

If the preliminary injunction is limited to the time between now and January 4, 2008, the likelihood of harm to Defendant's business during such a small number of business days is not significant, whereas the improper dissemination of Plaintiff's intellectual property to third parties could lead to irreparable harm. Therefore, the Court finds that the balance of hardships, at least between now and January 4, 2008, is on the side of the Plaintiff.

C) <u>Plaintiff's likelihood of success on the merits</u>

In cases where "the hardship balances in favor of the plaintiff, then the likelihood of success of the claim is displaced and the plaintiff must only show that questions raised concerning the merits are 'so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for

more deliberate investigation.'"  *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006)(quoting *Blackwelder*, 550 F.2d at 195).  Plaintiff believes that not only is it facing significant harm if a TRO is not granted, but that it is likely to prevail in the Arbitration.

Plaintiff argues that Defendant's Final Draft Report obviously does not meet the standard for the final report required by the Contract in order to necessitate the final payment, and thus that the Arbiters will conclude that it was well within in its contractual rights to refuse payment.  In addition, Plaintiff argues that the Contract is clear in its grant of specific license rights to Plaintiff for technology that Defendant is now claiming belong to it alone.

The Contract and Arbitration are governed by the laws of Sweden.  This Court is reluctant to enter into a projection regarding the success of an action in a foreign jurisdiction.  However, it agrees with Plaintiff that it has raised sufficiently serious and substantial questions regarding the merits of the case to meet the burden for a preliminary injunction.

D)   The public interest

The parties to this Contract agreed that it should be governed by the law of Sweden, and that any dispute arising from it should be subject to arbitration in accord with the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce.

It is not generally in the public interest to have two judicial bodies considering the same dispute at the same time.  Plaintiff argues that the Stockholm Arbitration Rules, which govern the current arbitration dispute between the parties, does not disallow a judicial injunction pending the outcome of the arbitration, thereby alleviating the problem of two bodies exerting jurisdiction.  Defendant argues that it is proper to allow the Court in Sweden to hear this request for preliminary relief, and asserts that such relief is available there while an arbitration is pending.  It is in the public interest to abide by the choice of law in Contracts and to uphold the results and process of Arbitration. Further, this Court is not in the business of enjoining parties from breaching contracts, but rather in ascertaining appropriate relief after a contract is breached.

      However, it is also in the public's interest to preserve the status quo and protect the sanctity of contracts, intellectual property rights, and patent material.  Failure to grant a TRO and thereby inhibit further contract breach is harmful to the public's ability to rely on contract agreements.  Such a precedent could chill the willingness of parties to engage in contracts that involve the sharing of trade secrets with other parties, in fear that courts will not protect their information in the case of a breach.  In addition, it is in the public

9

interest for the Court to make certain that appropriate relief unavailable in other forums be granted. For that reason, the Court will grant a limited preliminary injunction until the parties submit affidavits on or before January 4, 2008, regarding the availability of preliminary relief in Sweden while the Arbitration is pending. In order to minimize harm to Defendant while adequately protecting the Plaintiff, the injunction will be limited, enjoining Defendant from entering into any agreements with third parties, or sharing with third parties information, relating to a high-energy, electron scrubbing system for shipboard applications or filing or prosecuting any patent application regarding such technologies, until January 4, 2008.

## IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction and will order a Preliminary Injunction.

An appropriate order will issue.


December 21, 2007                          /s/
Alexandria, Virginia                James C. Cacheris
                          UNITED STATES DISTRICT COURT JUDGE